## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARHEA BENDER-MATHIS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | C.A. No. 1:23-CV-208 |
| | ) | |
| THE CITY OF ERIE, | ) | |
| JOSEPH SCHEMBER, | ) | |
| DAN SPINARZY, | ) | |
| JASON TRIANA, | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION

U.S. D.J. Susan Paradise Baxter

### I.    Introduction

This *pro se* § 1983 action arises from Plaintiff Sharhea Bender-Mathis's arrest, detention, and prosecution. Defendants—the City of Erie, Mayor Joseph Schember, Police Chief Dan Spinarzy, and Detective Sergeant Jason Triana—are sued in their individual and official capacities. Plaintiff's initial Complaint was dismissed for failure to state a claim but leave to amend was granted. *See* ECF No. 31. The Amended Complaint was filed and Defendants have moved to dismiss. ECF No. 33; 34.

### II.    The Allegations of the Amended Complaint

On April 19, 2022 Det. Jason Triana applied for a search warrant of the residence of 2020A East 10th Street. ECF No. 33-1 at 20. The search warrant[1] details that he and other detectives,

---

[1] Attached to the Amended Complaint are many court records related to the criminal case against Plaintiff. Courts within the Third Circuit have held that a court may take judicial notice of court

1

using a confidential informant, performed multiple controlled buys of drugs from Dajean Williams who is alleged to cohabitate with Plaintiff. *Id.* at 21. It is also averred that identifiable "buy money" was used in the controlled purchases. *Id.* at 22. During the investigation Dajean Williams was observed leaving 1055 Rankine Avenue—which appears to be Plaintiff's primary residence—arriving at 2020A East 10th Street and, after a short time inside, completing alleged drug transactions with a confidential informant. *Id.* Both 1055 Rankine Avenue, and 2020A East 10th Street are controlled, possessed, or leased by Plaintiff. ECF No. 33 ¶ 52.

On April 20, 2022—the day of the search warrant execution—Plaintiff was surveilled by Erie police officers as she drove from her residence at 1055 Rankine Avenue to a nearby Planet Fitness, where she remained for over an hour engaging in lawful activity. *Id.* at ¶¶ 10–11. Upon exiting the gym, plainclothes Officers Chodubski and Suchy, approached her in the parking lot, seized her phone and keys, searched her person, and arrested her stating that they had a warrant for the Dodge Durango she was driving. *Id.* ¶ 13. Officers also notified Plaintiff that police were presently at both of her residences investigating the alleged crimes committed by Dajean Williams. *Id.* ¶ 13. The arrest occurred at approximately 10:20 a.m. *Id.* ¶ 12. Plaintiff states that she was handcuffed, questioned, transported to the police station, and booked without being read her Miranda rights or shown a warrant. *Id.* ¶¶ 16–17.

The application for search warrant produced by Plaintiff particularly describes only 2020A East 10th Street as the "specific description of premises and or persons to be searched." ECF No.

---

dockets at the motion to dismiss stage. *See In re Congoleum Corp.*, 426 F.3d 675, 679 n.2 (3d Cir. 2005) (taking judicial notice of "state court proceedings insofar as they are relevant"); *Mollett v. Leith*, 2011 WL 5407359, at *2 (W.D. Pa. 2011) ("A court may also take judicial notice of the docket in Plaintiff's underlying criminal trial.") *aff'd sub nom. Mollett v. Leicth*, 511 Fed. App'x 172 (3d Cir. 2013). Accordingly, this Court will take judicial notice of these documents because they are court records and because their authenticity is undisputed.

33-1 at 20. Plaintiff sought to procure all warrants related to the search of 2020A East 10th Street, 1055 Rankine Avenue, and for the Dodge Durango. ECF No. 33 ¶ 37. No additional search warrant was made available to Plaintiff upon her request. ECF No. 33-1 at 15. None of the "Inventory/Receipt" documents provided by Plaintiff contain applicable "warrant control numbers" such that it can be ascertained at this stage whether additional warrants exist. *Id.* at 17-18. Plaintiff also states that she was never personally served with any warrants or inventory sheets as detailed in the "return of service/inventory" paperwork alleging that multiple warrants justifying all the searches do not exist. *Id.* at 16-19 (inventory and return of services documents indicating that Plaintiff was personally served with the relevant warrant); ECF No. 33 ¶ 37 (alleging that only one search warrant exists).

Nevertheless, searches of Plaintiff's properties at 1055 Rankine Avenue and 2020A East 10th Street commenced at 10:30 a.m. and 10:40 a.m. ECF No. 33 ¶¶ 18–19; ECF No. 33-1 at 17-18. A search of the Dodge Durango began at 1:19 p.m. ECF No. 33-1 at 19. Inventory sheets documented the seizure of $18,532—among other drugs and paraphernalia—from these locations and her vehicle. ECF No. 33 ¶ 45. Plaintiff avers that the inventory sheets omitted any reference to the alleged "buy money" later cited in the criminal complaint. *Id.* ¶ 46.

It is unknown when the Police criminal complaint was signed—authorizing the arrest of Sharhea Williams—however it is timestamped as filed at 5:17p.m. ECF No. 33-1 at 9-12. Plaintiff was released on bond April 21, 2022. ECF No. 33 ¶ 31. Plaintiff was ultimately charged with drug-related offenses based on evidence found during the searches. *Id.* ¶ 22. The charges were withdrawn on January 4, 2023, without a preliminary hearing or explanation. *Id.* ¶ 43.

Based on these factual averments, Plaintiff identifies several legal claims:

3

- "Violation of Fourth Amendment rights – unlawful search warrant based on false information)";

- "Violation of Fourth Amendment rights –unlawful arrest and seizure at Planet Fitness";

- "False Imprisonment";

- "Violation of Fourth Amendment rights –unlawful arrest and seizure due to lack of probable cause";

- "Fabrication of Evidence";

- "Fabrication of Evidence – false claim of personal service"; and

- "Monell."

The only named Defendants are: the City of Erie, Mayor Joseph Schember, Police Chief Dan Spinarzy, and Detective Jason Triana. As to Defendants Mayor Schember and Police Chief Spinarzy, Plaintiff alleges only that they had direct oversight over police officers and failed to properly train and supervise them in the execution of search warrants and arrests. ECF No. 33 ¶¶ 6, 7, 116, 117.

## III.    Standards of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court accepts as true all well pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court

need not accept as true unsupported conclusions and unwarranted inferences. *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000). Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678. In deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, any exhibits attached to the complaint, and matters of public record. *Pryor v. Nat'l Collegiate Athletic Assoc.*, 288 F.3d 548, 560 (3d Cir.2002).

Because Plaintiff is proceeding pro se, the allegations of her complaint must be "liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court must "apply the applicable law, irrespective of whether [Plaintiff] has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002); *See also Higgs v. Att'y Gen. of the US.*, 655 F.3d 333, 339 (3d Cir. 2011) ("Our policy of liberally construing pro se submissions is "driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471,475 (2d Cir. 2006)."). Notwithstanding this relaxed pleading standard, however, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina*, 704 F.3d 239, 245 (3d Cir. 2013).

## IV.  Discussion

### A.  Lack of Probable Cause – the Unlawful Arrest and False Imprisonment Claims

Plaintiff brings two claims related to her arrest at Planet Fitness: unlawful arrest and false imprisonment. ECF No. 33, ⁋ ⁋ 72-78 and 79-84. Both legal claims ultimately turn on the same fundamental question: whether the arresting officers had probable cause to arrest Plaintiff. *See*

*Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). *See also, Baker v. McCollan*, 443 U.S. 137, 145 (1979).

The Court recognizes several difficulties with how Plaintiff has framed these claims: First, the allegations focus principally on the conduct of Officers Suchy and Chodubski during the arrest. While she mentions these officers by name elsewhere in her complaint, she has not named either of them as Defendants to this action.

Second, Plaintiff seeks to hold Sergeant Triana liable based on his supervisory role, alleging the arrest occurred "under [his] direction." ECF No. 33 ¶ 77. But the law generally requires more than supervisory status to establish liability. Plaintiff would instead be required to plead—with particularity—that Triana knowingly provided false, material information leading to Plaintiff's arrest and detention in light of how her claims are styled. *See O'Hara v. Hanley*, 2009 WL 2043490, at *6-7 (W.D. Pa. July 8, 2009); *see also, e.g., Thorpe v. Little*, 804 F. Supp. 2d 174, 184 (D. Del. 2011)(describing supervisory liability pleading); *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Third, Plaintiff references statements by the arresting officers about having "a warrant for the vehicle." ECF No. 33 ¶ 13. There may be confusion about the scope of the warrant Triana obtained on April 19, 2022. *See, e.g*, ECF No. 33-1 at 20 (warrant application). While Plaintiff contends the warrant did not authorize actions regarding the Dodge Durango, 1055 Rankine Avenue, or her arrest, she has not alleged facts showing Triana knowingly gave false information to the arresting officers about the warrant's scope bringing about her arrest or the unlawful searches.

Because Plaintiff has not named the arresting officers as Defendants, and because her allegations against Triana do not sufficiently establish his personal involvement in any constitutional violation, these claims cannot proceed in their current form. Should Plaintiff wish to pursue these claims, she would need to either: (1) name the arresting officers as Defendants and allege facts showing they lacked probable cause for the arrest; or (2) as to Triana, provide specific factual allegations demonstrating his personal involvement in any constitutional violation. The Court nevertheless analyzes Plaintiff's claim below.

As previously noted, for a § 1983 claim based on false arrest, the inquiry is "whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. Philadelphia*, 855 F.2d 136, 141 (3d Cir.1995). *See also James v. City of Wilkes-Barre*, 700 F.3d 675, 682-83 (3d Cir. 1995) ("A false imprisonment claim under § 1983 which is based on an arrest made without probable cause … is grounded in the Fourth Amendment's guarantee against unreasonable seizures."). Critical to Plaintiff's claim is that a false arrest claim turns on whether law enforcement lacked probable cause at the moment of apprehension. *See Wright v. City of Philadelphia*, 409 F.3d 595 (3d Cir. 2005) (probable cause is evaluated as of the time of the arrest). Examining Plaintiff's Amended Complaint and the attached exhibits, we find she has presented a plausible case that her arrest preceded the establishment of probable cause.

Plaintiff's version of events—that she was arrested before officers secured the evidence purportedly justifying her detention—is plausible both independently and in light of the Defendants' position. The Defendants' rationale behind the arrest relies on evidence obtained either after or during searches conducted at 10:30 AM (1055 Rankine Avenue) and 10:40 AM (2020A East 10th Street) or based solely on the fact that a search warrant existed. ECF No. 35 at 6 ("The searches and seizures performed by law enforcement here were predicated on search

warrants and Sergeant Triana's filing of the Criminal Complaint resulted in the arrest of Plaintiff.").

Defendants assert that probable cause for the search is *prima facie* probable cause for the arrest. *See id.* at 7 ("Because the execution of a search warrant by an independent district justice 'constitutes *prima facie* evidence of probable cause to prosecute' … and the search and seizure here were conducted pursuant to duly authorized warrants, there is a presumption that Sergeant Triana acted with probable cause….").

This Court disagrees with Defendants' position. While probable cause for arrest and a warrant are analytically similar, the Supreme Court has explained:

> "It does not follow, however, that probable cause for arrest would justify the issuance of a search warrant, or, on the other hand, that probable cause for a search warrant would necessarily justify an arrest. Each requires probabilities as to somewhat different facts and circumstances—a point which is seldom made explicit…."

*Zurcher v. Stanford Daily*, 436 U.S. 547, 557 n.6 (1978); *United States v. Outlaw*, 138 F.4th 725, 726 (3d Cir. 2025) ("Though they are often discussed in tandem, probable cause to search is not the same as probable cause to arrest."). The justification by Defendants for their arrest of the Plaintiff coupled with the plausibly pled allegations in the Amended Complaint as to the timeline of the arrest creates a reasonable inference that officers may have arrested Plaintiff before securing the evidence needed to justify that arrest.

The chronology of events, as detailed in the Amended Complaint and the supporting exhibits, is as follows:

10:20 a.m.: Plaintiff arrested by Officers Suchy and Chodubski[2]

---

[2] ECF No. 33 (Amended Complaint), ¶¶ 12, 13.

10:30 a.m.: Search of 1055 Rankine Avenue[3]

10:40 a.m.: Search of 2020A E. 10th Street[4]

10:54 a.m.: Plaintiff booked at Erie Police Jail[5]

5:15 p.m.: Police Criminal Complaint is filed[6]

This timeline raises constitutional concerns when examined against the four-page criminal complaint (ECF No. 33-1 at 9-12), which cites evidence obtained during the 10:40 a.m. search. For the criminal complaint to have established probable cause justifying Plaintiff's arrest by the 10:54 a.m. booking, police would have needed to: complete both searches (the last concluding at 10:40 a.m.); draft the detailed complaint; and obtain the necessary signatures—all within a 14-minute window. This compressed timeframe presents serious questions about whether the criminal complaint could have properly informed the arrest decision.

Further, the inference of post-hoc justification is strengthened by Plaintiff's allegation that during her initial detention, officers demanded information about "the key to Franklin Terrace [2020A] and whether Dajean Williams was inside the home" (ECF No. 33 ¶ 14) -- queries inexplicable if they had already secured the apartment and discovered the evidence allegedly found there. *Compare,* ECF No. 33-1 at 10 *with* ECF No. 33-1 at 17. Either (1) the arrest documentation reflects a near impossible administrative feat or (2) officers arrested first and documented their probable cause later.

---

[3] *Id.* at ⁋ 18.

[4] *Id.*

[5] ECF No. 33-1, page 1 (Booking Card indicating time of booking as 10:54 a.m.).

[6] ECF No. 33-1, pages 9-12 (Criminal complaint timestamped between 17:15 and 17:20).

This Court acknowledges that facts supporting Defendants' version of events may very well be uncovered at a later stage in this proceeding. Police departments can operate with near perfect coordination and efficiency in matters of grave consequence. Should evidence of an arrest warrant be found to exist before the arrest of Plaintiff, this Court will analyze Plaintiff's claim under the appropriate standard, as Plaintiff also later pleads that the criminal complaint contains materially false information. *See* ECF No. 33 at ⁋ 98; *See also, Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000). In light of that consideration, Plaintiff's alternative narrative—that she was arrested first and the evidentiary basis was established afterward—is at least plausible at this stage. The accuracy of Plaintiff's timeline remains to be determined through further proceedings, but the Amended Complaint clears the plausibility threshold for the first element.

As earlier discussed, also critical to the inquiry is the whether the *arresting officers* had probable cause. *See Dowling*, 855 F.2d 136 at 141. Here, while Plaintiff pleads that probable cause may not have existed at the time of the arrest, the arresting officers are not parties to this action. Plaintiff explicitly names Officers Chodubski and Suchy as her arresting officers. ECF No. 33 ¶ 13. Thus, the probable cause analysis set forth above applies to those officers, and her claim for false arrest must then name those officers as Defendants for the Court to proceed with this claim. Her claim for false arrest on these grounds is therefore dismissed without prejudice.

As to Defendant Triana, § 1983 liability can extend beyond the arresting officer to other officials whose intentional actions set the arrest in motion. *See Berg v. Cty. of Allegheny*, 219 F.3d 261, 271–72 (3d Cir. 2000). When the named defendant is not the officer who personally arrested or detained the plaintiff, the plaintiff must show that the defendant knowingly provided false, material information leading to the plaintiff's arrest and detention. *O'Hara*, 2009 WL 2043490, at *6-7; *Wilson v. Borough*, 2017 WL 467974, at *3 (W.D. Pa. Feb. 3, 2017)(" [I]n order to state a

false arrest claim against [Defendant], plaintiffs are obligated to allege facts from which it could be inferred that her arrest was based on false and material information provided by [Defendant].”). Here, Plaintiff has failed to plead that Defendant Triana knowingly provided false information to Officers Suchy or Chodubski, leading to her unlawful arrest. Therefore, this claim also cannot proceed as plead and is dismissed without prejudice.

Since the Plaintiff is proceeding *pro se* and has plausibly stated that probable cause did not exist at the time of her arrest but failed to include the correct parties, this Court must consider the proper course under the Federal Rules of Civil Procedure and this Circuit's precedent. The Third Circuit, like others, adheres to a liberal approach in permitting amendments—particularly for *pro se* litigants, whose pleadings are held to “less stringent standards than formal pleadings drafted by lawyers” *Haines v. Kerner*, 404 U.S. 519, 520(1 972). Further, Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that leave to amend should be “freely given when justice so requires,” (Fed. R. Civ. P. 15(a)(2)) a principle that carries particular weight where, as here, Plaintiff's failure to name necessary parties appears inadvertent rather than strategic or dilatory. *Foman v. Davis,* 371 U.S. 178, 182 (1962) (“In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'").

The appropriate remedy is thus to dismiss Plaintiff's false arrest and false imprisonment claims at this stage without prejudice to allow Plaintiff to file a second amended Complaint—provided, of course, that such amendment would not be futile or unduly prejudicial to the existing parties. The Court will then have afforded Plaintiff *two* opportunities to amend her Complaint.

Although we do not—and may not—offer legal guidance, our opinions have outlined the shortcomings in Plaintiff's pleadings. It remains Plaintiff's obligation to carefully review those rulings and conform any future filing to the requirements discussed therein. Should Plaintiff fail to remedy the identified deficiencies again, the Court may have no alternative but to dismiss the action with prejudice (without further leave to amend).

### B.  The Fabrication of Evidence Claim

Plaintiff brings a claim styled as "Fabrication of Evidence under §1983." ECF No. 33 ¶¶ 94-102. She alleges that the criminal complaint falsely stated that "$460 of pre-recorded 'buy money' was found at 1055 Rankine Avenue" while the official inventory sheets from the search— which meticulously recorded all seized currency—did not mention such funds. *Id.* at ¶ 96-97. Plaintiff contends this discrepancy demonstrates the alleged buy money was fabricated, and that this false inclusion in the criminal complaint directly led to her prosecution and the seizure of $18,532 in property. *Id.* at ¶ 99. The claim focuses on Defendant Triana as the officer who drafted the challenged criminal complaint.

To prevail on a fabrication-of-evidence claim, a plaintiff must demonstrate that "there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." *Black v. Montgomery Cnty.*, 835 F.3d 358, 372 (3d Cir. 2016). This requires showing both a "meaningful connection" between the alleged fabrication and the prosecution, *id.*, and that the evidence "was so significant that it could have affected the outcome of the criminal case," *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014).

Plaintiff's claim fails to meet this standard. While she alleges the $460 "buy money" found at 1055 Rankine Avenue was fabricated, the criminal complaint identifies substantial independent evidence supporting the charges—including 1,198 grams of fentanyl, drug packaging equipment,

cutting agents, and $7,776 in cash—all discovered at 2020A East 10th Street, a property Plaintiff acknowledges owning. *See* ECF No. 33-1 at 11 (Plaintiff owns the property); ECF No. 33-1 at 10 (police criminal complaint detailing items found at 2020A East 10th Street). These averments alone provided probable cause for the charges of drug trafficking and related offenses as stated in the criminal complaint. Plaintiff has not alleged that the absence of the $460 would have prevented her prosecution. Accordingly, this claim must be dismissed with prejudice.

### C. Fourth Amendment Claims Related to Probable Cause and Search Warrants

Plaintiff brings two additional claims under the Fourth Amendment that she styles as "Violation of Fourth Amendment Rights (Unlawful Search Warrant based on False Information)" (ECF No. 33 at ¶ ¶ 65-71) and "Violation of Fourth Amendment Rights (Unlawful Arrest and Seizure Due to Lack of Probable Cause)." *Id.* at ¶ ¶ 85-93. These claims, while similar, present two distinct legal theories: First, Plaintiff alleges officers conducted unlawful searches of both a Dodge Durango and the 1055 Rankine Avenue property, when the sole warrant authorized only a search of 2020A East 10th Street. *Id.* at ¶ 37. These allegations concern searches conducted by Officer Suchy. ECF No. 33-1 at 18-19. Second, Plaintiff contends the warrant application contained false information, rendering any probable cause for her arrest invalid. ECF No. 33 at ¶ 87. This portion of the claim targets Defendant Triana as the officer who prepared the warrant application. ECF No. 33-1 at 20.

The Court notes a threshold deficiency: Plaintiff has not named Officer Suchy as a defendant. Accordingly, the claims related to the allegedly unlawful searches of the Dodge Durango and 1055 Rankine Avenue property must be dismissed without prejudice.[7]

---

[7] The executed search warrant authorizes only the search of "2020A E. 10th St. Apt #3." ECF No. 33-1 at 20. The accompanying affidavit, while appearing to request authorization to search three locations (1055 Rankine Avenue, the apartment, and a gray Dodge Durango), was not incorporated

Plaintiff challenges the warrant application's alleged omissions and misrepresentations regarding probable cause. While we have previously addressed the warrant's geographic limitations, we examine these additional arguments to provide complete resolution of the issues presented.

To prevail on a claim for false arrest based on a warrant, the plaintiff must establish that the defendants: (1) "knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant"; and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir.2000) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir.1997)). First, we identify any potentially reckless omissions or assertions. Second, we reconstruct the affidavit by inserting omitted facts and removing false ones. Finally, we assess whether the reconstructed affidavit would still establish probable cause. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 470 (3d Cir. 2016).

Plaintiff identifies three main omissions. First, Plaintiff claims that the affidavit allegedly failed to name Plaintiff as the properties' owner or connect her to criminal activity. But search warrants target property, not persons. *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993). Moreover, the affidavit specifically notes Plaintiff's residence at both locations and her relationship to Williams, the investigation's target. These facts were properly disclosed.

_____

by reference into the warrant. Under Third Circuit precedent, the particularity requirement must be judged solely by the warrant's terms. *Doe v. Groody*, 361 F.3d 232, 239 (3d Cir. 2004). Plaintiff suggests that the included warrant, which was limited to a search of 2020A Rankine Avenue, was the only warrant obtained by police. *See* ECF No. 33-1 at 15. While Defendants reference multiple "warrants" (ECF No. 35 at 8), they have produced no others. The warrant's plain terms fail to authorize the searches of the 1055 Rankine Avenue property or the Dodge Durango. These allegations could support a Fourth Amendment claim against Officer Suchy, who conducted the searches. As previously noted however, because Plaintiff has not named Officer Suchy as a Defendant, the claim must be dismissed without prejudice.

Second, Plaintiff contends the Dodge Durango could not have taken part in earlier transactions because it only arrived in Erie on April 2, 2022. This argument fails because the affidavit limits its allegations to activity from March 31 "til present," with observed transactions beginning approximately "two weeks" (April 5, 2022) prior to April 19. 2022. ECF No. 33-1 at 21-24. The vehicle's purchase history is immaterial to its later observed use in drug transactions.

Third, the undisclosed parole address does not affect the probable cause determination. Parole residency requirements do not preclude criminal activity elsewhere, and detectives directly observed Williams conducting transactions at the subject properties. None of these alleged omissions, whether considered separately or together, demonstrate reckless disregard for the truth.

Even a reconstruction of the Affidavit of Probable Cause bears little support for Plaintiff's position. The affidavit sets forth: Investigators suspected Dajean Williams, also known as "Spanky," of selling narcotics from the property located at 1055 Rankine Avenue. Williams is listed as the owner, occupier, or possessor of 1055 Rankine Avenue. This suspicion was based on controlled purchases arranged through a confidential informant. During one such operation, the informant provided detectives with a phone number used to coordinate a drug transaction. Detectives observed a charcoal gray Dodge Durango bearing temporary license plate number 47624V8 engage in a brief exchange with the informant. Following this interaction, the informant turned over a substance that field-tested positive for fentanyl and identified "Spanky" as the individual who had provided it. Further investigation revealed that the Durango was registered to Dajean Williams. The informant subsequently confirmed, through Williams's license photograph, that he was indeed "Spanky." Over the preceding two weeks, detectives conducted additional surveillance where they observed the same gray Dodge Durango—still bearing temporary plate 47624V8—parked outside 1055 Rankine Avenue several times. During another controlled buy,

detectives watched Williams exit the front door of 1055 Rankine Avenue, enter the Durango, and drive to 2020A East 10th Street. There, he entered Apartment #3 before returning to the vehicle. Soon after, he engaged in a "window-to-window" exchange with the informant, who later provided detectives with another substance confirmed to contain fentanyl. Detectives subsequently verified that Sharhea Mathis resided at 2020A East 10th Street and 1055 Rankine Avenue. These observations, taken together, formed the basis for probable cause in the warrant application. *See* ECF No. 33-1 at 20-24.

Including the fact that Williams was paroled at a different address, and ultimately that the Dodge Durango was recently purchased does not materially affect the statements set forth in the affidavit of probable cause such that it undermines the heart of the averments made or the determination of probable cause.

Unlike omissions, assertions can be made with reckless disregard for the truth even if they involve minor details—recklessness is measured not by the relevance of the information, but the demonstration of willingness to affirmatively distort truth. Reckless disregard for the truth can be shown by statements made with a "high degree of awareness of [the statement's] probable falsity." *Lippay v. Christos*, 996 F.2d 1490, 1501 (3d Cir.1993) (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964)). An assertion is made with reckless disregard when "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Russo*, 212 F.3d at 788 (citing *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir.1995)).

Plaintiff challenges only one assertion in the affidavit which has already been addressed. Plaintiff claims similarly—as with the omission argument—that Triana inserted false information related to the Dodge Durango. As earlier discussed, this claim is contradicted by Plaintiff's own

16

exhibits showing the affidavit's temporal limitations.[8] Plaintiff's claim regarding the assertion of information related to the Dodge Durango fails as plead. Plaintiff's claims on these grounds are dismissed with prejudice.

### D.  Procedural Due Process Claim – False Claim of Personal Service

Plaintiff brings a claim styled as "Fabrication of Evidence - False Claim of Personal Service." ECF No. 33 at ¶ ¶ 103-112. The crux of this claim appears to be that officers falsely claimed to have personally served her with the search warrant, thereby depriving her of procedural due process. She contends this alleged fabrication caused her "significant harm...including emotional distress, loss of property, and the denial of her constitutional rights," particularly the ability to challenge the searches and seizures. *Id.* at ¶ 112.

The Fourth Amendment does not require the executing officer to serve the warrant on the owner before commencing a search. *See Groh v. Ramirez*, 540 U.S. 551, 562 n. 5 (2004). In *United States v. Grubbs*, the Supreme Court re-emphasized that the Fourth Amendment does not require service of the warrant before its execution. 547 U.S. 90 (2006). Rejecting the lower court's conclusion that an anticipatory search warrant must set forth the "triggering condition," the Court explained that:

> "This argument assumes that the executing officer must present the property owner with a copy of the warrant before conducting his search. In fact, however, neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41 imposes such a requirement. "the absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is ... evidence that the requirement of particular description does not protect an interest in monitoring searches."

---

[8] When exhibits contradict pleadings, the exhibits control. *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018); *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 649 (W.D. Pa. 1999) ("[I]n the event of a factual discrepancy between the pleading and the attached exhibit, the exhibit controls. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n. 8 (3d Cir.1994).").

*Id.* at 97–99 (cleaned up). The failure to personally serve Plaintiff, alone, does not offend the constitution.

Liberally construing the Amended Complaint, Plaintiff also appears to argue that the false service harmed her ability to contest the warrant(s). ECF No. 33 at ¶ 109. This misunderstands the nature of search warrants. "The absence of a constitutional requirement that the warrant be exhibited at the outset of the search, or indeed until the search has ended, is ... evidence that the requirement of particular description does not protect an interest in monitoring searches." *United States v. Stefonek*, 179 F.3d 1030, 1034 (7th Cir. 1999) (citations omitted). The Constitution protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, ex ante, the "deliberate, impartial judgment of a judicial officer ... between the citizen and the police," *Wong Sun v. United States*, 371 U.S. 471, 481–482 (1963), and by providing, ex post, a right to suppress evidence improperly obtained and a cause of action for damages. *Grubbs*, 547 U.S. 90 at 99. Thus, Plaintiff's claim on these grounds is dismissed with prejudice as she is not only presently availing herself of ex post remedies, but the Constitution does not require that Plaintiff be able to contest search warrants at the scene.

### E. The *Monell* Claim

Finally, Plaintiff asserts that the City of Erie maintained an unconstitutional policy or custom permitting officers to conduct searches, seizures, and arrests without proper probable cause documentation. Plaintiff alleges that Mayor Schember and Police Chief Spinarzy[9] had direct

---

[9] A *Monell* claim may be brought only against the municipality itself, because local governments can be sued directly under § 1983 for monetary, declaratory, or injunctive relief whereas suits against municipal officials in their official capacities generally represent only another way of pleading an action against an entity of which an officer is an agent. *See Monell*, 436 U.S. 690; *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 854 (3d Cir. 2014). While Plaintiff has pled that her *Monell*

18

oversight over police officers and failed to properly train and supervise them in the execution of search warrants and arrests. While serious, these allegations fail to meet the exacting standards for municipal liability under 42 U.S.C. § 1983.

Municipalities cannot be held responsible for constitutional violations solely on a theory of respondeat superior. *Monell v. Department of Soc. Services*, 436 U.S. 658, 691 (1978). Rather, liability attaches only when the execution of an official policy or longstanding custom causes the constitutional injury. To establish such liability, a plaintiff must demonstrate: "(1) he possessed a constitutional right of which he was deprived; (2) the municipality being sued had a policy; (3) the policy 'amounted to deliberate indifference' to the plaintiff's constitutional right; and (4) the policy was the 'moving force behind the constitutional violation.'" *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989). Municipal liability may also attach on a failure-to-train or supervise theory. While there is a "close relationship between policy-and-custom claims and failure-or-inadequacy claims, the avenues remain distinct: a plaintiff alleging that a policy or custom led to his or her injuries must be referring to an unconstitutional policy or custom, and a plaintiff alleging failure-to-supervise, train, or discipline must show that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

The present Amended Complaint falls short of these pleading requirements. Plaintiff's generalized allegations about improper police practices lack the specificity needed to state a cognizable *Monell* claim. She identifies no formal policy authorizing unconstitutional conduct, nor does she allege facts showing a widespread custom sufficient to establish municipal awareness and

---

claim is against the City, Spinarzy and Schember, the only appropriate defendant on any *Monell* claim is the municipal entity.

acquiescence. Moreover, she fails to identify any alleged deficiency in the city's training program which she must in order to state a claim.

At bottom, the Plaintiff's theory of municipal liability rests on conclusory assertions rather than factual allegations that satisfy the pleading standard. Where, as here, a complaint fails to identify a specific policy or custom, demonstrate deliberate indifference, or establish causation, dismissal is appropriate. The *Monell* claim cannot proceed as pleaded and will be dismissed without prejudice.

### F. Qualified Immunity

Defendants argue that they are entitled to qualified immunity. "Qualified immunity protects [government officials] who make wrong but reasonable judgment calls absent clearly established law." *Ortiz v. Cnty. of Cumberland*, 2025 WL 2473703, at *7 (D. N.J. Aug. 28, 2025). Qualified immunity requires a two-prong analysis. *Anglemeyer v. Ammons*, 92 F.4th 184, 188 (3d Cir. 2024). First, the court "must decide whether the facts that a plaintiff has shown make out a violation of a constitutional right. And second, [the court] must determine whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Id.* (cleaned up).

Because, at this point in the proceedings, Plaintiff has not adequately alleged sufficient facts to make out the violation of her constitutional rights and all of her claims are being dismissed, this Court will not undertake a full immunity analysis at this juncture.

## V. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 34) will be granted. The Amended Complaint fails to state viable claims under 42 U.S.C. § 1983 and will be dismissed in its entirety. The dismissal is with prejudice as to Plaintiff's fabrication of evidence

claims, Fourth Amendment warrant falsity claims, and procedural due process claims, as amendment would be futile. The dismissal is without prejudice as to Plaintiff's false arrest/false imprisonment claims, unlawful search claims, and *Monell* claims but only to the extent that Plaintiff may file a Second Amended Complaint within 30 days pursuant to the discussion above. No new claims or theories may be asserted without prior leave of Court. Should Plaintiff fail to file an amended pleading within the prescribed timeframe, the dismissal shall convert to a dismissal with prejudice as to all claims.

An appropriate order follows.